1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE: PHENYLPROPANOLAMINE
(PPA) PRODUCTS LIABILITY
LITIGATION,

_____

This document relates to:

*Isac v. Alpharma, Inc.*, C05-84

MDL NO. 1407

ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER OR
DISMISS

This matter comes before the court on a motion by defendants Alpharma, Inc. and Alpharma U.S. Pharmaceuticals Division ("Alpharma") for transfer and dismissal. Having reviewed the parties' briefs filed in support of and opposition to this motion, the court finds and rules as follows.

I. BACKGROUND

On November 15, 2004, plaintiffs Sheryl and George Isac, Jr. filed a complaint in the United States District Court for the District of Minnesota. On December 17, 2004 a conditional trans- fer order, including the Isacs' case, was filed in this district, and on January 18, 2005 the case was transferred to this MDL.[1]

The Isacs allege that on September 30, 1999 George Isac

_____

[1]According to Alpharma, it was not properly served the conditional transfer order, of which it did not receive notice until January 11, 2005.

ORDER
Page – 1 –

suffered a hemorrhagic stroke after ingesting the PPA-containing medicine Tussin CF, manufactured by Alpharma. Plaintiffs further aver that on June 14, 2001, they contacted a physician regarding the possible connection between PPA and Mr. Isac's stroke, and that on January 28, 2002, the physician responded confirming the possible connection between PPA and stroke.

The Isacs have been residents of Michigan, and defendants have been incorporated in New Jersey, during all times relevant to this matter. Plaintiffs do not allege that any witnesses or evidence is located in Minnesota, or that any activity related to their claims took place there.

II. DISCUSSION

A.   <u>Motion to Transfer</u>

Defendants first seek a transfer of venue under 28 U.S.C. § 1404(a), which provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Plaintiffs argue that while courts presiding over multi-district litigation have broad authority over pretrial proceed-ings, that authority does not extend to motions to transfer venue. For support plaintiffs rely on the language of 28 U.S.C. § 1407(a), the statute enabling the MDL process, which provides that "[e]ach action [transferred to an MDL court] *shall be remanded* by the panel at or before the conclusion of such pre-trial proceedings *to the district from which it was transferred*

ORDER
Page  –  2  –

1  unless it shall have been previously terminated." 28 U.S.C. §

2  1407(a) (emphasis added). The U.S. Supreme Court has read this

3  directive as depriving an MDL court of the discretion to transfer

4  a case under 28 U.S.C. § 1404(a) to itself for trial. *See*

5  *Lexecon, Inc. v. Milberg Weiss*, 523 U.S. 26, 28 (1998).

6      The court concludes that given the language of 28 U.S.C. §

7  1407(a) and the Supreme Court's *Lexecon* opinion, it does not have

8  the authority to rule on any motion to transfer a case under 28

9  U.S.C. § 1404(a). The reasoning on which the *Lexecon* Court relied

10  in finding a lack of an MDL court's authority to self-transfer

11  applies with equal force to motions to transfer venue to a

12  "third-party" court. Rejecting the proposition that an MDL court

13  had the authority to transfer a case, the Court reasoned that to

14  do so would "conclusively thwart[] the Panel's capacity to obey

15  the unconditional command of § 1407(a)," i.e. to remand a case to

16  the district from which it was transferred. *Id.* at 36. Transfer-

17  ring a case to a "third-party" district in this case, as in

18  *Lexecon*, would prevent the Panel from remanding the case to the

19  district from which it came.

20      A footnote of the opinion further counsels against a narrow

21  reading of *Lexecon*'s holding. In that footnote the Court observed

22  "[b]ecause *we find that the statutory language of § 1407 pre-*

23  *cludes a transferee court from granting any § 1404(a) motion*, we

24  have no need to address the question whether § 1404(a) permits

25  self-transfer given that the statute explicitly provides for

26  transfer only "to any other district." *Id.* at 41 n. 4 (emphasis

added).  Other federal courts have also found that this language

precludes an MDL court from acting under 28 U.S.C. § 1404(a) to

rule on a motion to transfer. *See In re Bridgestone/Firestone,*

*Inc. Tires Products Liability Litigation*, 190 F. Supp. 2d 1125,

1146 n. 31 (S.D. Ind. 2002) ("transfer to a possibly more appro-

priate federal court under 28 U.S.C. § 1404 appears to be beyond

our power at this point.")(citing *Lexecon*, 523 U.S. at 41 n.4).

In their reply defendants do not address plaintiffs' argu-

ment directly.  Instead, defendants suggest that because Alpharma

was not served the conditional transfer order in a timely manner,

and was not given an opportunity to file an objection with the

MDL panel, this court should rule on the 1404(a) motion despite

the *Lexecon* prohibition thereon.  The court rejects this argument,

which is accompanied by neither legal authority nor reasoning.

The motion to transfer is, for the reasons stated above, denied.

B.   Choice of Law

The court's conclusion that it does not have the authority

to transfer the Isacs' case to Michigan does not end the inquiry.

The question remains whether this court should apply the law of

Minnesota or Michigan to the these pretrial proceedings.

In Minnesota, where this case was originally filed, the

threshold question in a choice-of-law analysis is whether the

issue under scrutiny is substantive or procedural. *See Danielson*

*v. National Supply Co.*, 670 N.W.2d 1 (Minn. Ct. App. 2003). If

the issue is substantive, the court should employ a five-step

analysis. *Milkovich v. Saari*, 203 N.W.2d 408 (Minn. 1973). If it

ORDER
Page – 4 –

is procedural, the court should apply the law of the forum. *Davis v. Furlong*, 328 N.W.2d 150, 153 (Minn. 1983) (citation omitted).

According to both parties, the only material difference between the relevant laws of Minnesota and Michigan is in the states' respective statutes of limitations. Under Michigan law, the statute of limitations for personal injury claims is three years from discovery of the injury. M.C.L. A. § 600.5805. Minnesota allows six years for negligence and four for products liability claims. Minn. Stat. Ann. § 541.05. Arguably, therefore, certain claims brought under Michigan law would be time-barred while the same claims brought under Minnesota law would not.

The question, then, is whether under Minnesota law a statute of limitations conflict is procedural or substantive. Defendants claim that the issue in Minnesota is unsettled. They argue that although under Minnesota law statutes of limitations have historically been considered procedural, recent cases represent a trend towards finding them substantive. The court, according to defendants, should employ the five-part choice-of-law analysis.

The case cited by defendants does not evince a "trend" toward treating a statute of limitation conflict as substantive. *See Myers v. Gov't Employees Ins. Co.*, 225 N.W.2d 238 (Minn. 1974). *Myers* involved an interpretation of a Louisiana statute that created a cause of action against a tortfeasor's liability insurance carrier, and a Minnesota statute putting certain limitations, including a time bar, on such actions brought in Minnesota. The Minnesota court in which the case was brought

found – relying in part on a ruling by the high court of Louisi-
ana – that the Louisiana statute created in a plaintiff certain
substantive rights. The court did not find that straightforward
statutes of limitations are substantive for choice-of-law pur-
poses, and certainly did not hold that there was a "trend"
towards finding such statutes substantive. *See Danielson*, 670
N.W.2d at 5-6 ("The court in *Myers* did not cite, much less
purport to overrule, the traditional rule that statutes of
limitation are procedural and are governed by the law of the
forum.").

   In contrast, numerous pronouncements from Minnesota's high
court establish that statutes of limitations are procedural for
choice-of-law purposes. *See Kennecott Holdings Corp. v. Liberty
Mut. Ins. Co.*, 578 N.W.2d 358, 361 n. 7 (Minn. 1998); *American
Mut. Liab. Ins. Co. v. Reed Cleaners*, 122 N.W.2d 178, 180 n. 1
(Minn. 1963); *In re Daniel's Estate*, 294 N.W. 465, 469 (Minn.
1940). Federal courts interpreting Minnesota law have found the
same. *See Cuthbertson v. Uhley*, 509 F.2d 225, 226 (8th Cir.
1975). The court finds that under Minnesota law a statute-of-
limitations question is procedural, and that the statutes of
limitations of the forum state, Minnesota, therefore apply to
plaintiffs' claims.

   C. Whether Under Minnesota Law Plaintiffs' Claims Should Be
Dismissed

   Finally, the court must determine whether under Minnesota
law, including Minnesota's statutes of limitations, plaintiffs'

1   claims survive a motion to dismiss. Defendants seek dismissal of
2   plaintiffs' claims for strict liability, breach of warranty,
3   consumer fraud, and Uniform Deceptive Trade Practices Act for
4   failure to file within Minnesota's statutes of limitations; and
5   of their claims for deceit by concealment, negligent misrepresen-
6   tation, or violation of the Deceptive Trade Practices Act or
7   Consumer Fraud Act for failure to plead with sufficient particu-
8   larity. Defendants also seek dismissal of plaintiffs' claim for
9   negligent misrepresentation, claiming that Minnesota law does not
10  recognize such a cause of action. The court addresses defendants'
11  arguments in turn.

12      (1) <u>Statute of Limitations</u>

13      Defendants first argue that plaintiffs' claims for strict
14  liability and breach of warranty, which carry a four-year statute
15  of limitations under Minnesota law, should be dismissed. *See*
16  Minn. Stat. Ann. § 541.05. Defendants argue that more than four
17  years have lapsed between the date of Mr. Isac's injury, Septem-
18  ber 1999, and the filing on this case on November 15, 2004.

19      Plaintiffs respond that defendants have failed to take into
20  account Minnesota's discovery rule, under which "two elements
21  must be present for a cause of action to accrue for injuries
22  related to a defective product: 1) a cognizable manifestation of
23  the disease or injury, and 2) evidence of a causal connection
24  between the injury or disease and the defendant's product, act or
25  omission." *Klempka v G.D. Searle and Co.*, 769 F.Supp. 1061, 1065
26  (D. Minn 1991). Defendants do not dispute in their reply that the

ORDER
Page - 7 -

1  discovery rule should apply to this case.

2      Plaintiffs have alleged that they did not know of any such
3  causal connection until, at the earliest, June 14, 2001, when
4  they consulted a physician about the possible PPA-stroke causal
5  connection, a date that defendants do not dispute. Given this
6  undisputed date, the court finds that the claims were filed in a
7  timely manner.

8      Defendants next argue that the Isacs' consumer fraud and
9  Deceptive Trade Practices Act claims are barred by Minnesota's
10  six-year statute of limitations. Such claims run from the date
11  the product was purchased, which plaintiffs allege was January
12  25, 1999. *See* Plaintiff's Fact Sheet, Affidavit of Gregory P.
13  Sautter, Exh. 3 at 27. The motion as it pertains to these claims
14  is therefore also denied.

15      (2) <u>Failure to Plead With Sufficient Particularity</u>

16      Defendants argue that plaintiffs' claims for deceit by
17  concealment, negligent misrepresentation, or violations of the
18  Uniform Deceptive Trade Practices Act or Consumer Fraud Protec-
19  tion Act are insufficiently pled and should be dismissed. Defen-
20  dants asseverate, with little analysis, that plaintiffs "have
21  failed to adequately plead their fraud claim and therefore . . .
22  should be dismissed as a matter of law." Motion at 22.

23      Plaintiffs respond that under Minnesota law, a plaintiff
24  making fraud claims "must plead the type of facts omitted, the
25  type of document in which they should have appeared and the way
26  in which their omission made the documents misleading." Response

ORDER
Page  -  8  -

at 14, citing *Fujisawa Pharm. Co. v. Kapoor*, 814 F. Supp. 720,

727 (D.Ill. 1993). Here, plaintiffs have alleged that:

> 20. In 1994, members of the NDMA and the PPA Task
> Force, had direct knowledge of at least one manufac-
> turer and distributor (Thompson Medical Company) of
> over-the-counter, non-prescription drugs containing PPA
> that reports several life threatening reactions to PPA
> and voluntarily added "black box" warning labels to its
> products which contained PPA. Such products warned
> that: "There have been reports that stroke, seizure,
> heart attacks, arrhythmias, psychosis, and death might
> be associated with ingestion of Phenylpropanolamine."
> Despite the feasibility and ease with which Defendants
> could have warned consumers about the dangers of Tussin
> CF, Defendants failed to do so, and consumers who
> purchased and/or ingested Tussin CF were never warned
> or informed of these health dangers.
> 21. Defendants represented or impliedly represented
> that Tussin CF was safe and did not pose a risk of
> stroke, seizure, heart attacks arrhythmias, psychosis,
> and death.
> ***
> 30. Defendants have concealed material facts, includ-
> ing serious risks associated with ingestion of PPA,
> from Plaintiffs in product packaging, labeling, adver-
> tising, promotional campaign materials, among other
> ways, regarding the safety and use of products contain-
> ing PPA.

Complaint, ¶¶20-21, 30. In their response to the motion plain-

tiffs also specify where in their complaint they make the allega-

tions supporting each element of their fraud-based claims. *See*

Response at 16. In their reply defendants do not address the

substance or the merit of plaintiffs' argument, merely reiterat-

ing that "[s]hould this court apply Minnesota substantive law,

the Isacs' [claims, including for fraud] must be dismissed."

Reply at 5.

The court finds that the allegations cited above in plain-

tiffs' complaint are sufficiently particular so as to withstand a

ORDER
Page – 9 –

1   motion to dismiss. While certain specifics are indeed missing, at
2   this stage in the proceedings it is reasonable to expect that
3   plaintiffs have not yet identified the exact parties responsible
4   for the allegedly negligent actions or omissions.

5       Defendants also seek dismissal based on plaintiffs' "fail-
6   ure" to allege a statutory basis for their claims based on the
7   Uniform Protective Trade Practices Act and the Consumer Fraud
8   Act. Defendants cite no authority supporting the proposition that
9   failure to cite a statutory basis is fatal to a consumer protec-
10  tion claim. Further, in their response to this motion plaintiffs
11  identify the statutory and judicial basis for these claims. Under
12  the liberal federal pleading standards, defendants are more than
13  able to identify the claims plaintiffs are bringing against them.
14  The court therefore denies defendants' motion to dismiss these
15  counts.

16      (3) <u>Negligent Misrepresentation</u>
17      Defendants move for dismissal of plaintiffs' negligent
18  misrepresentation claim, submitting that Minnesota does not
19  recognize this cause of action. They cite the Minnesota Supreme
20  Court's pronouncement that "[w]hile we do not foreclose the
21  possibility of recognizing in Minnesota the tort of negligent
22  misrepresentation involving the risk of physical harm, we decline
23  to do so today." *Smith v. Brutger Cos.*, 569 N.W.2d 408, 414
24  (Minn. 1997). This court is not in the business of pioneering
25  state law, especially where a state's highest court has deliber-
26  ately put off doing so itself. Unless or until Minnesota courts

ORDER
Page – 10 –

1  make clear that a negligent misrepresentation claim is not
2  viable, defendants' motion to dismiss it is without merit.
3      (4) <u>Loss of Consortium</u>
4      Defendants move for dismissal of Sheryl Isac's loss of
5  consortium claim, arguing it is derivative of her husband's
6  causes of action. Because the court denies defendants' motions
7  for dismissal of Mr. Isac's claims, the motion to dismiss the
8  loss of consortium claim is denied as moot.
9  III. CONCLUSION
10     For the forgoing reasons, the court hereby DENIES defen-
11 dants' motions for transfer and to dismiss.
12     DATED at Seattle, Washington this 24th day of June, 2005.

13
14
15
16     BARBARA JACOBS ROTHSTEIN
17     UNITED STATES DISTRICT JUDGE
18
19
20
21
22
23
24
25
26

ORDER
Page – 11 –